**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 14-cv-2717-WJM-NYW

FAIRWAY 16 HEATHERRIDGE ASSOCIATION, THE,

      Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

      Defendant.

---

## ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

      Plaintiff The Fairway 16 Heatherridge Association ("Fairway 16") brings this action against Defendant American Family Mutual Insurance Company ("American Family") for alleged breach of insurance contract, common law bad faith breach of insurance contract, and statutory bad faith breach of insurance contract. (*See* ECF No. 4.) Fairway 16, a condominium owners' association, claims that its insurance policy with American Family obligates American Family to pay to repair hail damage allegedly incurred on the condominium roofs in September 2013. (*Id.*)

      Currently before the Court is American Family's Motion for Partial Summary Judgment on Plaintiff's Bad Faith and Statutory Claims. (ECF No. 46.) For the reasons explained below, this motion is denied.

## I.  LEGAL STANDARD

      Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  FACTS

The following facts are undisputed unless otherwise noted.

In September 2013, the Fairway 16 condominium complex was insured by American Family against certain forms of property damage.  (ECF No. 46 at 2–3, ¶¶ 1–3; ECF No. 46-1.)[1]  Fairway 16 claims that many or all of its buildings sustained hail damage from a storm on September 14, 2013.  (*Id.* ¶ 2.)

Fairway 16 reported this claim to American Family in December 2013.  (*Id.* at 3,

---

[1] All ECF page citations are to the page number in the ECF header, which does not always match the document's internal pagination, particularly in exhibits.

¶ 3.)[2]  American Family then retained a licensed engineer, Bruno Lutz, P.E. ("Lutz"), to inspect the Fairway 16 property, particularly the roofs.  (*Id.* ¶ 6.)  Lutz inspected the property in January 2014 and submitted his written report to American Family on February 5, 2014 ("Lutz Report").  (*Id.*; ECF No. 46-11.)

The Court will discuss the details of the Lutz Report as they become relevant in the Analysis section below.  For present purposes, it suffices to state that Lutz noted definite signs of hail damage to fencing, vinyl window trim, window screens, roof vents, siding, satellite dishes, and fascia boards.  (ECF No. 46-11 at 3–6.)  However, he believed that the roofs themselves manifested mostly age-related deterioration and some "damage that is consistent with older, weathered hail impact."  (*Id.* at 6.)  Lutz judged the age of these potential impacts based on the "graying" and "whiteness" of the exposed asphalt layer (*i.e.*, the asphalt beneath the granular surface, which surface had potentially been stripped away by a hail strike).  In other words, Lutz appears to be saying that the bleaching of the exposed asphalt suggests more sun exposure than would be expected if the hail damage had happened recently.  He ultimately concluded that "the roofs have not been damaged as the result of hail impact occurring since April 2012."  (*Id.* at 11.)  The April 2012 date is relevant because that is when American Family began insuring the Fairway 16 property.  (*Id.* at 2.)

---

[2] Much of Fairway 16's communication with American Family in this matter appears to have been made through The C3 Group, a public adjuster Fairway 16 engaged to assist it with the hail-damage claim.  (*See id.* at 3–5.)  The C3 Group is not a party and, for all relevant purposes, appears to have acted as Fairway 16's agent in this matter.  No party makes any argument that relies on the distinction between Fairway 16 and The C3 Group.  Accordingly, for simplicity, the Court will not distinguish between the two, and will refer only to Fairway 16.

American Family sent the Lutz Report to Fairway 16 on February 7, 2014, and informed Fairway 16 that its claim was denied.  (ECF No. 46 at 4, ¶ 7.)  Fairway 16 then engaged a different engineer, Ryan Hardesty, P.E. ("Hardesty"), for a second opinion. (*Id.* at 5, ¶ 11.)  Hardesty inspected the property on February 13, 2014, and then produced a report dated March 9, 2014 ("Hardesty Report").  (*See* ECF No. 46-12 at 2, 9.)  Hardesty mostly disagreed with Lutz's reasoning.  He concluded that the hail damage on the roofs occurred "potentially on September 14, 2013."  (*Id.* at 8.)  At his deposition in this case, Hardesty admitted that he chose the adverb *potentially* because "[t]here's no way to know" with certainty that hail damage observed on February 7, 2014, took place on September 14, 2013.  (ECF No. 48-2 at 7.)  "But," he said, "my belief was that it was potentially/most probably on that date."  (*Id.* at 8.)

Sometime before this lawsuit was filed—no party specifies precisely when— Fairway 16 transmitted the Hardesty Report to American Family.  (*See* ECF No. 46 at 8.)  In addition, on April 15, 2014, Fairway 16 transmitted to American Family a localized weather report prepared by a third-party meteorology firm.  (ECF No. 47 at 6, ¶ 5; ECF No. 47-3.)  This report relied on historical weather data to conclude that, in the late afternoon of September 14, 2013, the Fairway 16 property experienced a 16-minute hailstorm with maximum winds of about 29 mph and hail ranging in size from 0.5 inches to 1.5 inches in diameter.  (ECF No. 47-3 at 1–2.)  As this lawsuit demonstrates, that information did not persuade American Family to reverse its denial of Fairway 16's claim.

## III.  ANALYSIS

American Family claims that Fairway 16 can never meet its evidentiary burden to prove common law bad faith, and that Fairway 16's statutory bad faith claim is barred by the language of the relevant statute.  The Court will address each argument in turn.

### A.     Common Law Bad Faith

In a first-party insurance dispute such as this one, "an insurer acts in bad faith in delaying the processing of or denying a valid claim when [1] the insurer's conduct is unreasonable and [2] the insurer knows that the conduct is unreasonable or recklessly disregards the fact that the conduct is unreasonable."  *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985).  The insured (usually the plaintiff) bears the burden to prove these elements.  *Id.*

One way an insured can prove bad faith is by demonstrating that his or her claim was not "fairly debatable."  *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217–18 (Colo. App. 2010).  But it is not likewise true that an insurer can entirely disprove bad faith by demonstrating that the claim *was* fairly debatable.  "[F]air debatability is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case."  *Id.* at 1218.  Even if the claim is fairly debatable, the insured could still prove bad faith through evidence of, for example:

•      total failure to investigate the claim, *see* 14 *Couch on Insurance* § 207:24 (3d ed.);

•      failure to conduct a reasonable investigation based on all available

5

information, *see Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004); *see also* 14 *Couch on Insurance* § 207:25 ("Implicit in the duty to investigate is the requirement that the investigation be adequate and fair.");

- undue delay in handling the claim, *see Gold v. State Farm Fire & Cas. Co.*, 2013 WL 1910515, at *6 (D. Colo. May 8, 2013);

- a low settlement offer intended to force litigation, *see Sanderson*, 251 P.3d at 1220–21;

- total denial of liability "solely for the purpose of forcing a compromise so that the insurer will not have to pay the full amount of the claim for its admitted liability," 14 *Couch on Insurance* § 207:28;

- "not providing a reasonable explanation of a denial of a claim," *Allen*, 102 P.3d at 344; or

- in-house policies that reward employees for defeating claims, *see Zolman v. Pinnacol Assur.*, 261 P.3d 490, 500 (Colo. App. 2011); *see also Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279 (Ariz. 2000).

Fairway 16 grounds its bad faith case in the second example provided above, *i.e.*, an alleged failure to perform a reasonable investigation.  In particular, Fairway 16 criticizes American Family for relying solely on the findings of the engineer it retained (Lutz), to the exclusion of other information in its possession and the findings of the engineer Fairway 16 retained (Hardesty).  (ECF No. 47 at 8–9.)  In other words, Fairway 16 appears to argue that, at least as of the date American Family received Hardesty's

report and the historical weather report (approximately March 2014), American Family had a duty to reevaluate the basis for its denial of Fairway 16's claim. *Cf. Allen*, 102 P.3d at 345 (affirming bad faith verdict because, among other things, the evidence showed that the insurer "concluded its investigation without exploring [certain] conflicting statements . . . or by talking with [a relevant witness]").

Fairway 16 has raised a triable issue of fact in this regard. Fairway 16 points out several alleged weaknesses in the Lutz Report. (ECF No. 47 at 8–9.) A reasonable jury could conclude from these weaknesses that American Family had, objectively speaking, improperly discharged its duty to investigate, and, subjectively speaking, was at least reckless in its disregard for facts potentially favoring Fairway 16. For example, Lutz states that "[a] square (100 square foot area) was marked off on each exposure of [certain] buildings [in the Fairway 16 complex] and inspected for hail damage." (ECF No. 46-11 at 6.) Lutz, however, does not go on to describe what he observed within those 100-square-foot regions. Instead, he discusses an alleged lack of even distribution of potential hail damage "over numerous adjacent buildings" and "throughout larger areas of the complex." (*Id.*) Hardesty points out Lutz's failure to report what he found in the 100-square-foot regions. (ECF No. 46-12 at 6.) Moreover, Hardesty states that marking off 100-square-foot regions (known as "test squares") and documenting the damage within them, is an insurance industry standard practice. (ECF No. 46-12 at 5.) Hardesty himself marked off four test squares on various faces of various buildings and counted the likely hail strikes within each, finding approximately 21, 14, 20, and 14 hits in those squares, respectively. (ECF No. 46-12 at 5–6.)

The Lutz Report could also be viewed as somewhat inconsistent regarding the

7

recency of the hail damage.  Lutz states that "spatter marks are temporary indicators of hail strikes," as opposed to "broken window trim and dented metal," which are "permanent indicators" of hail strikes; and Lutz includes a photograph of what he describes as "[s]patter marks" on a satellite dish located somewhere on the Fairway 16 property.  (ECF No. 46-11 at 3.)  Lutz further states that the spatter marks were caused by "high-frequency, small to moderate diameter hail."  (*Id.*)  Accordingly, some hailstorm must have occurred with sufficient recency such that these "temporary indicators" of hail strikes did not have time to fade.  Nonetheless, when it comes to potential hail damage on the roof, he opines that all of it must have occurred before April 2012.  This is not necessarily contradictory—perhaps Lutz would be willing to concede that a hailstorm happened fairly recently before his inspection, but only with sufficient force to cause spattering, not roof damage.  Nonetheless, Lutz's failure to address this potential gap in his report naturally raises questions.

Finally, American Family has arguably ignored pertinent weather information. American Family admits that, in January 2014, it commissioned a third-party vendor to produce an analysis of the weather at the Fairway 16 property on September 14 and September 15, 2013.  (ECF No. 47 at 6, ¶ 3; ECF No. 47-8.)  American Family has not produced to Fairway 16 whatever it received from that vendor (*see* ECF No. 47 at 3 n.1), which could be perceived by a jury as suspicious.[3]  Furthermore, Fairway 16 produced to American Family in March 2014 its own third-party weather report stating

---

[3] Since this litigation commenced, Fairway 16 independently obtained a weather report from American Family's vendor stating that "[a] significant hail event" with golf ball-sized hail "occurred at the address on the date inquired."  (ECF No. 47 at 3 n.1; ECF No. 47-7 at 2, 3.)

that

> hail with size ranging from 0.50 inches to 1.50 inches in diameter is estimated to have been observed at the [Fairway 16 property] from approximately 3[:]56 PM September 14th, 2013 until approximately 4[:]12 PM on September 14th, 2013. . . . The hailstones were dense, composed of solid ice. The peak wind velocity that accompanied the hail was out of the south at approximately 29 mph.

(*Id.* at 6, ¶ 5; ECF No. 47-3 at 2.)

These examples, taken together, would be sufficient to submit both the objective an subjective elements of Fairway 16's bad faith cause of action to the jury. *Cf.* 14 *Couch on Insurance* § 207:25 ("the insurer has a duty to diligently search for evidence which supports insured's claim and not merely seek evidence upholding its own interests"); *see also id.* ("Investigations have been deemed in bad faith where the insurer * * * [i]gnored evidence contrary to its position."). Accordingly, the Court may not enter summary judgment on Fairway 16's common law bad faith claim.[4]

_____

[4] In its Reply brief, American Family "note[s] that Plaintiff has not identified any expert that will testify to [the] issue [of reasonableness]." (ECF No. 48 at 5.) If this observation was intended as an implicit argument that expert evidence is required, American Family raised it too late to be considered. *See Colo. Rail Passenger Ass'n v. Fed. Transit Admin.*, 843 F. Supp. 2d 1150, 1171 (D. Colo. 2011) (argument raised for the first time in reply brief is waived). In any event, the Colorado Supreme Court has held that an insurance bad faith plaintiff does *not* need expert testimony regarding reasonableness in all cases. *Allen*, 102 P.3d at 344–45. Rather, in some cases the reasonableness of an investigation is within a lay juror's competency to judge. *See id.* at 345 (holding, in the context of a car accident investigation, that "[t]he reasonableness of an insurer's investigation into the underlying events . . . is not a technical question and does not require additional professional training beyond the knowledge of the average juror"). This could be perceived as a question of evidence, meaning that the Colorado Supreme Court's holding usually would not bind this Court. *See Blanke v. Alexander*, 152 F.3d 1224, 1231 (10th Cir. 1998) ("The admissibility of evidence in diversity cases in federal court is generally governed by federal law."). But even if *Allen* is not binding, the undersigned finds it persuasive, as have other judges in this District. *See, e.g.*, *Windsor Court, LLC v. Am. Family Mut. Ins. Co.*, 2013 WL 799589, at *4 n.3 (D. Colo. Mar. 5, 2013) (Arguello, J.).

B.      **Statutory Bad Faith**

Fairway 16 also seeks to hold American Family liable under Colorado Revised

Statutes §§ 10-3-1115 and -1116.  These statutes permit a first-party insured to

"recover reasonable attorney fees and court costs and two times the covered benefit,"

*id.* § 10-3-1116(1), if the insurer "unreasonably delay[s] or den[ies] payment of a claim

for benefits owed," *id.* § 10-3-1115(1)(a).  American Family focuses on the "benefits

owed" phrase and argues that

> [t]he amount of benefits owed—or stated differently, the
> extent of damages caused by the September 13, 2014 hail
> event—has not been determined.  While [Fairway 16]
> disagrees with American Family's position and contends that
> replacement of the roofs are [*sic*] warranted, [Fairway 16]
> has commenced this lawsuit to have a jury make that
> determination.  Until the jury makes such a determination,
> there are no benefits "owed" to [Fairway 16].

(ECF No. 46 at 10.)

Insurers have raised this argument numerous times in this District, and it has

never succeeded.  *See, e.g.*, *Peden v. State Farm Mut. Auto. Ins. Co.*, 2014 WL

4696401, at *2 (D. Colo. Sept. 22, 2014); *Baumann v. Am. Family Mut. Ins. Co.*, 2012

WL 122850, at *5 (D. Colo. Jan. 17, 2012); *Tadehara v. State Farm Mut. Auto. Ins. Co.*,

2011 WL 4048782, at *5 (D. Colo. Sept. 12, 2011).  Indeed, the same law firm that

represents American Family here presented this precise argument to the undersigned

in a previous lawsuit, and the undersigned rejected it.  (*See Fiechtner v. Am. Family

Mut. Ins. Co.*, Case No. 09-cv-2681 (D. Colo.), ECF No. 363 at 1–6; ECF No. 437 at

245–46; ECF No. 439 at 230–33.)  The Court stands by its previous reasoning, and

American Family's counsel's decision to resurrect this repudiated argument once again

to this Court comes perilously close to sanctionable bad faith.

As has been stated before, American Family's interpretation makes the statute either a nullity (because the likelihood of an insurance company refusing to satisfy a duly entered judgment is vanishingly small) or an absurdity (because it is inconceivable that the General Assembly would require the insured to bring two lawsuits, one to establish "benefits owed" and the other to recover the penalty).  Summary judgment for American Family is denied on this issue.

## IV.  CONCLUSION

For the reasons set forth above, American Family's Motion for Partial Summary Judgment on Plaintiff's Bad Faith and Statutory Claims (ECF No. 46) is DENIED.  This matter REMAINS SET for a 5-day jury trial scheduled to begin on July 18, 2016, with a Final Trial Preparation Conference set for July 1, 2016, at 10:00 a.m. in Courtroom A801.

Dated this 14th day of March, 2016.

BY THE COURT:

_____
William J. Martinez
United States District Judge

11